**Rodney Moline ERICKSON, et al., Appellants,**

v.

**FEDERAL LAND BANK OF OMAHA, Appellee.**

**No. CV88–L–717.**

United States District Court, D. Nebraska.

June 1, 1989.

Rodney and Vera Erickson pro se.

Ronald L. Sanchez, McCarthy & Gale, North Platte, Neb., for Federal Land Bank of Omaha.

## MEMORANDUM ON APPEAL

URBOM, District Judge.

Rodney and Vera Erickson appeal from a journal entry dated November 30, 1988, wherein a United States bankruptcy judge[1] found that the Federal Land Bank of North Platte had the right to proceed on its motion for relief from the automatic stay that it needs to continue foreclosure proceedings against the Ericksons' land. The bankruptcy court found that the bank was entitled to proceed because it had determined that the Ericksons' loan was distressed under the Agricultural Credit Act of 1987. The court also found that the Ericksons had no equity in the real estate and that the Ericksons did not carry their burden of showing that the property subject to the mortgage was necessary for an effective reorganization. Specifically, the bankruptcy court found that "[t]he FLB submitted convincing evidence that it had determined the loan was 'distressed' under the Agricultural Credit Act of 1987 and had considered and denied the restructuring request of the debtors." Based on these findings, the bankruptcy judge granted the Farm Credit Bank relief from the stay.

■ In determining whether an order of a bankruptcy judge is a final order, this court is guided by the factors listed in *In re Olson*, 730 F.2d 1109, 1109 (8th Cir. 1984):

(1) the extent to which the order leaves the Bankruptcy Court nothing to do but to execute the order, ... (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief, ... and (3) the extent to which a later reversal on that issue would require recommencement of the entire proceeding.

If the decision of the bankruptcy judge to grant the bank relief from the stay were reversed at a later date, and I am thinking particularly on the basis of non-compliance with the Agricultural Credit Act, then these proceedings would likely be required to be recommenced. Moreover, in keeping with the more liberal view of what constitutes a separate dispute for purposes of an appeal from bankruptcy court, I find that there remains nothing for the bankruptcy court to do in this foreclosure related proceeding but to execute the order. *Cf. In re Leimer*, 724 F.2d 744, 745 (8th Cir.1984). Thus, I shall review the bankruptcy judge's decision.

The scope of review employed by district courts in their review of bankruptcy decisions has been outlined by the Eighth Circuit. "The bankruptcy court's findings of fact are not to be overturned unless clearly erroneous; however, its conclusions of law are subject to *de novo* review. ... [A]n appellate court has the power to correct errors of law, including 'a finding of fact that is predicated on a misunderstanding of the governing rule of law.'" *In re Martin*, 761 F.2d 472, 474–75 (8th Cir.1985).

■ In seeking reversal, the Ericksons argue that the Federal Land Bank did not comply with the provision of the Agricultural Credit Act that requires banks to make a specific determination as to whether a borrower's loan is distressed. The notice provision of the Act states at 12 U.S.C. § 2202a(b)(1):

On a determination by a qualified lender that a loan made by the lender is or has become a distressed loan, the lender shall provide written notice to the borrower that the loan may be suitable for restructuring, and include with such notice—

(A) a copy of the policy of the lender established under subsection (g) of this section that governs the treatment of distressed loans; and

(B) all materials necessary to enable the borrower to submit an application for restructuring on the loan.

---

1. The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the district of Nebraska.

*Id.* (emphasis added). Subsection (g) requires that each bank develop a restructuring policy that includes an explanation of the application process and of the borrower's right to seek review of a denial of the application from a credit review committee.

In notifying the Ericksons that their loan "may be a distressed loan," the Ericksons contend that the bank failed to make a determination that their loan *was or had become* distressed. A copy of *In re Wagner,* BK88-1788 (Bankr.D.Neb. Jan. 13, 1989), was filed by the Ericksons in support of their motion for an emergency stay. Exhibit A, filing 9. In that case, the bankruptcy court determined that a bank had failed to provide evidence to show whether a determination had been made regarding whether the loan was distressed. The court concluded:

> Since the only evidence before the Court is an affidavit of a Farm Credit Bank officer attaching the letters sent to debtors and debtor's response, this court cannot determine if the Farm Credit Bank made the statutorily required determination prior to mailing the restructuring materials. The letters do not indicate that the determination was made.

*Id.* The Ericksons argue that the bankruptcy judge erroneously concluded that the bank had made the determination that their loan was distressed because the bank submitted no more evidence than did the Farm Credit Bank in *Wagner.* They also seem to argue that, even if the bank made the determination, they received insufficient notice because the notice did not inform them that the bank had determined that their loan "was or had become" distressed. Based on the *Wagner* decision and the definition of "distressed loan" found in section 2202a(a)(3), the Ericksons contend that the Federal Land Bank failed to comply with the Agricultural Credit Act of 1987 and, therefore, they are entitled to reversal of the lower court's decision.

I must determine whether the bankruptcy judge's findings, that the bank made a determination that the loan was distressed and that the bank complied with the Agricultural Credit Act, are predicated on a proper understanding of the governing rule of law. *In re Martin, supra.* The term "distressed loan" is defined as:

> a loan that the borrower does not have the financial capacity to pay according to its terms and that exhibits one or more of the following characteristics:
> (A) The borrower is demonstrating adverse financial and repayment trends.
> (B) The loan is delinquent or past due under the terms of the loan contract.
> (C) One or both of the factors listed in subpart (A) or (B) together with inadequate collateralization present a high probability of loss to the lender.

At the hearing, the Federal Land Bank offered the affidavit of John E. Hartman who is a loan officer for the bank. The affidavit states:

> The records of the Farm Credit Bank reflect that there was due and owing on the Variable Interest Rate Note the sum of $296,418.21 on February 25, 1987, together with interest thereon at a daily rate of $99.62187 from February 25, 1987; the amount due and owing as of October 31, 1988, would, accordingly, be $356,789.06.

Affidavit of John E. Hartman at para. 5.

In a letter dated July 7, 1988, the Ericksons were told that their loan "may be considered a distressed loan" and were informed of their possible eligibility to restructure their loan under the Agricultural Credit Act. Affidavit of Hartman, Exhibit 1 at para. 7 and Exhibit E. Included in the July 7 letter was a copy of the bank's restructuring policy and the application papers and a checklist of the enclosed documents. *Id.* Prompted by an inquiry made by the Ericksons, in a letter dated August 4, 1988, Hartman provided the debtors with the statutory definition of a "distressed loan" and stated that "under the guidelines of the ... definition, [their] loan would qualify as a distressed loan." *Id.* at para. 7 and Exhibit F. The letter also stated "[A]s a distressed loan, your loan may be eligible for a restructure." The Ericksons' restructuring plan was denied and that denial was upheld by the Credit Review Committee. *Id.* at para. 7.

Based on this evidence, the bank contends that its loan officer made the appropriate determination about the loan and that he provided the Ericksons with sufficient notice under the Agricultural Credit Act.

The documents included in the bank's designation of record support the bank's explanation of the evidence submitted at the hearing. It also shows that on July 21, 1988, a joint stipulation was filed by the parties seeking to delay consideration of the bank's motion for relief to provide the Ericksons the opportunity to submit a restructuring plan under the Act. Pursuant to the stipulation, the hearing on the motion for relief was postponed until October 31, 1988.

Based on a review of this evidence, I conclude that the bankruptcy judge properly applied the Agricultural Credit Act. The notice provision requires that the bank make a determination that a borrower's loan is distressed. Once that determination is made, the statute mandates that the bank "provide written notice to the borrower that the loan *may be* suitable for restructuring," and to include with the notice a copy of their restructuring policy and application materials. The bankruptcy judge found that the bank had determined that the loan was distressed under the Act. The information presented in Hartman's affidavit at paragraph 5 and in the letters of July 7, 1988, and August 4, 1988, lend support to this finding and, therefore, it is not clearly erroneous. Moreover, based on the same evidence, I find that the bank complied with the Act in sending proper notice, including the copy of the policy and the application materials, to the Ericksons. Accordingly, I find no reason to reverse the finding of the bankruptcy court on these matters.

The Ericksons also contend that they, as debtors in possession, had equity in the property subject to the mortgage. The bankruptcy judge found that the bank's claim was in excess of $296,000 and that the value of the real estate was approximately $230,000. Therefrom, the bankruptcy judge concluded that the "debtors have no equity." The Ericksons argue that under Neb.Rev.Stat. § 76–301, they are entitled to have their property appraised and to have the value of any improvements that they have made on the property since the time that the mortgage was given to be credited to them as equity in the property.

The bank argues that Neb.Rev.Stat. § 76–301 does not apply in this situation and has no bearing on whether the Ericksons had equity in the property. The bank argues that the protections afforded to occupiers of land under the statute inure only in cases where two parties claim title to the land, and not in foreclosure actions. Moreover, the bank claims that the Ericksons should be barred from raising on appeal any issue not presented to the bankruptcy court. I agree with the bank on both points and find that the Ericksons did not raise this issue in the bankruptcy court. *See* Neb.Rev.Stat. § 76–301 and *In re Pester Refining Co.*, 845 F.2d 1476, 1486 (8th Cir.1988). I conclude that the evidence submitted at the hearing supports the bankruptcy judge's finding that the claim secured by the mortgage exceeds the value of property and, the finding is not, therefore, clearly erroneous.

■ The debtors also state that the bankruptcy judge erroneously concluded that "[b]ecause there is no plan on file in this twenty-two month old case and no evidence that a feasible plan is confirmable in the near future, the property is not necessary for an effective reorganization." The Ericksons argue that the bankruptcy judge failed to give consideration to the existence of several adversary proceedings that are pending at this time. They reason that when the adversary proceedings are resolved, then the time will be appropriate to submit a plan.

The bank argues and the evidence indicates that the Ericksons failed to satisfy their burden of proof in showing that the property was needed for a reorganization. The Supreme Court stated that the debtor must show that there is a "reasonable possibility of a successful reorganization within a reasonable time." There is nothing in the record that demonstrates to me that

the bankruptcy judge's finding on this issue is clearly erroneous.

One final argument posed by the Ericksons is that they were not notified of the hearing on the motion for relief from the stay in their capacities as debtors-in-possession. The Ericksons do not deny that they received notice in their capacities as debtors. Because they are contemporaneously the debtors and, as is the case in many chapter 11 proceedings, the debtor-in-possession, notice to them in one capacity suffices as notice to them in the other capacity. This argument is frivolous and warrants no further explanation.

For all the reasons provided in this memorandum, I shall affirm the decision of the bankruptcy court dated November 30, 1988.